(Decided 12th November, 1891.)

---

NATHANIEL HORSEY *vs.* WILLIAM J. KNOWLES.

*Fieri facias—Void levy—Void sale.*

Where a constable on receiving a *fieri facias* makes a schedule of the property by simply naming the things that he knew the defendant possessed, and which were named to him by the plain-

tiff, but which he did not take possession of, and did not see, and did not serve the writ of execution on the defendant, such levy is void.

A sale under a *fieri facias*, made after the property has been removed from the State by the judgment debtor, is void.

APPEAL from the Circuit Court for Wicomico County.

The case is stated in the opinion of the Court.

The cause was submitted to ALVEY, C. J., MILLER, BRYAN, FOWLER, McSHERRY, and BRISCOE, J.

*James E. Ellegood,* for the appellant.

Reference was had to the following authorities: *Freeman on Executions, sec.* 290; *Kean vs. Newell,* 1 *Mo.,* 754; *Eads, Adm'r vs. Stephens, et al.,* 63 *Mo.,* 90; *Foster vs. Mabe,* 4 *Ala.,* 402; *Hazzard vs. Burton,* 4 *Harr.,* (*Del.,*) 62; *Williams vs. Hickman,* 2 *Harr.,* 464; *Boyce vs. Cannon, et al.,* 5 *Houston,* 412; *Russell vs. Stoeckell,* 5 *Houston,* 466; *Pennington vs. Chandler,* 5 *Harr.,* 394.

*E. Stanley Toadvin,* for the appellee.

ALVEY, C. J., delivered the opinion of the Court.

This was an action of replevin brought by the appellant against the appellee, for one horse, one mare, one colt, three cows, one calf, and one horse cart and harness alleged to be the property of the plaintiff, and to have been unlawfully taken and detained by the defendant.

The pleas were, 1st. That the defendant did not take or unlawfully detain the goods and chattels sued for; 2nd. That the goods and chattels sued for were the goods and chattels of the defendant; and 3rd. That the said goods and chattels were the property of one Priscilla E. Knowles. Issues were joined on these pleas, and the case was tried by the Court, without the aid of a jury;

and the finding and judgment being for the defendant, the plaintiff has appealed.

We perceive no ground for disturbing the judgment of the Court below. According to the well settled law of this State, the allegation of the wrongful taking is immaterial, and merely fictitious, in an action of replevin, like the present, and need not be proved; but the possession of the defendant, admitted by instituting the suit against him, was *prima facie* evidence of ownership, and the plea denying the unlawful detention, and the plea of property in the defendant, or in a third person, threw the whole burden of proof upon the plaintiff, who alleged the property to be in himself. *Cullum vs. Bevans*, 6 *H. & J.*, 469, 471. He could, therefore, only recover upon showing the right of property, or the right of immediate possession as against the defendant, to be in himself (*Cumberland Coal and Iron Co., et al. vs. Tilghman*, 13 *Md.*, 74,); and this he has utterly failed to do.

The plaintiff claims to have been a creditor of the defendant, and to have obtained a judgment against the latter in the State of Delaware, rendered by a justice of the peace of that State, and under an execution issued upon that judgment he claims to have purchased the property in controversy. The bill of exception states that the law of Delaware was offered in evidence to prove the jurisdiction of the justice, but the law itself is not set out. That, however, is not material, in the view we have of this case. It appears that a *fieri facias* was issued upon the judgment, and placed in the hands of a constable for execution; and, instead of a copy, proved to be a true copy, of the whole proceeding, including the judgment, the magistrate and constable were produced in person, with the original execution, and the schedule of the property, and appraisement thereof, alleged to have been levied on under the execution. And as the only questions presented are as to whether the alleged

levy upon and sale of the property sued for were valid, the proceeding under the execution should be described as recited by the constable, a witness produced by the plaintiff. He testified that on the day the execution came into his hands, he made the schedule of the property by simply naming the things that he knew the defendant possessed, and which were named to him by the plaintiff; but that he did not see the things he scheduled and appraised, and did not take them into possession, and *never saw* any of the animals replevied, except one of the horses, which, after the levy was made, he saw in the town of Laurel. He further testified that he never served the writ of execution on the defendant, but that he left a notice of the sale at his house with his daughter. That when he made the sale none of the animals, nor the cart and harness, mentioned in the declaration, were present or visible, nor under his control, as they had before the sale been taken into Maryland, to which State the defendant had moved. That the plaintiff in this suit, at the sale of the property, became the purchaser thereof, but that he, the witness, had not delivered it, as he had not the possession of it; and that he had made no return of the writ or of the sale made thereunder. It was further proved, that the property sued for in this action was part of the property scheduled and appraised by the constable at the time of making the supposed levy. But there was no evidence offered to show that such levy and sale were in accordance with any special law or practice of the State of Delaware.

On this state of case, the plaintiff invoked the Court to declare, that it was not competent to question the regularity of the proceedings under which he claimed title to the property sued for ; that notwithstanding the property was in Maryland when the sale thereof was made by the constable, that fact could not be relied on to defeat the plaintiff's title ; and that under the law

and the evidence the plaintiff was entitled to recover. These propositions were rejected by the Court; and in so ruling we think the Court was clearly right.

As to what constitutes a valid levy of an execution on personal property, as against the judgment debtor himself, would seem to be a subject of some diversity of decision. But all the cases seem to agree in holding that it is not sufficient that the officer merely makes an inventory of the property, and indorses the levy upon his writ, without the presence or view of the property. He must have the property in view, and where he can exercise control over it; (*Waters vs. Duvall,* 11 *G. & J.,* 48, 49;) and especially is this required where, by the law, it is made his duty to appraise the property, in order to avoid an excessive seizure, or to assure himself of the sufficiency of the levy to satisfy the execution. It is said to be sufficient that, after having the property within his view, and where he can control it, he does profess to levy upon and to assume control of the property by virtue of the execution, and with the avowed purpose of holding the property to answer the exigencies of the writ. *Freeman on Executions, sec.* 260, and cases there cited. See also 7 *Am. and Eng. Encycl. of Law,* 148, and the cases there collected. And it has been held, that where an officer goes to the debtor's property, or to the debtor himself, for the purpose of making a levy, and the debtor furnishes a list of property to be taken in execution, or by any other act assents to the levy as having been legally made, he will not thereafter be heard to object that there was some omission or informality in the levy as made by the officer. *Ibid.* And when a valid levy has been made upon personal property, the effect of it is, to take the right of possession from the judgment debtor and vest it in the officer, with the right to maintain any action that may be necessary for the protection of such possession, or posses-

sory right, during the time that the execution remains in force and unsatisfied. *Beatty vs. Chapline,* 2 *H. & J.,* 7, 10, 19 and 20; *Dezell vs. Odell,* 3 *Hill* (*N. Y.,*) 215; *Howland vs. Willetts,* 9 *N. Y.,* 173. Such levy places the property *in custodia legis*; but if the levy be in all other respects perfect, it will not be invalidated by leaving the property seized with the judgment debtor. *Freeman on Executions, sec.* 261. But here, the attempted levy and appraisement were made not only without the view or presence of the property, but in the absence and without the knowledge of the execution debtor; and it is not pretended that he ever subsequently acquiesced in or assented to the levy as made; and he is therefore in no manner estopped to question its validity. It is clear, the attempted levy was not merely irregular, but was wholly void and without effect.

But if the levy had been valid, the subsequent sale of the property to the present plaintiff, the execution creditor, was clearly void. The sale was made without the presence of the property, and when it was in the possession of the defendant, here in the State of Maryland. Bidders had no opportunity of seeing or estimating its value. *Mr. Freeman,* in his work on *Executions, sec.* 290, states the law to be, that sales of personal property by the officer must always take place at or near the place where such property is. Sales of property of this character, he says "would undoubtedly result in a great sacrifice to the defendant, unless it can be seen and examined by the bidders, and can be delivered to the purchasers on the day of sale. Hence, the law everywhere requires that personal property shall not be sold under execution, unless it is either present at the place of the sale, or is so near thereto that it can be readily examined by the bidders." And again he says: "A sale of personal property not within the view of the bidders may be vacated, unless its presence was waived by the defendant.

Horsey *vs.* Knowles.

If neither vacated nor waived, it is, by a decided preponderance of the authorities, declared to be void;" and he refers to a large number of cases, among which are *Linnendoll vs. Doe*, 14 *John.*, 222; *Sheldon vs. Soper*, 14 *John.*, 352; *Cresson vs. Stout*, 17 *John.*, 116; *Klopp vs. Witmoyer and Arentz*, 43 *Penn. St.*, 219; *Baker vs. Casey*, 19 *Mich.*, 220. The judgment must be affirmed.

*Judgment affirmed.*

(Decided 12th November, 1891.)